UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW BOLSHIN and IRINA KHMELNIK,<br><br>                Plaintiffs,<br><br>    v.<br><br>ELATE MOVING NETWORK LLC,<br><br>                Defendant. | CASE NO. 2:24-cv-00363-MJP<br><br>ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

**INTRODUCTION**

This matter comes before the Court on Defendant Elate Moving Network LLC's Motion for Partial Summary Judgment (Dkt. No. 28) and Plaintiffs Matthew Bolshin and Irina Khmelnik's Motion for Partial Summary Judgment (Dkt. No. 30). Having reviewed the Motions, the Responses (Dkt. Nos. 39, 44), the Replies (Dkt. Nos. 46, 48), and all other supporting materials, the Court GRANTS Plaintiff's Motion and DENIES Defendant's Motion. The Court finds this matter suitable for decision without oral argument.

# BACKGROUND

This dispute involves a move gone wrong. In 2023, Plaintiffs Mathew Bolshin and Irina Khmelnik sought to move from Vancouver, British Columbia to Playa Vista California. They hired Defendant Elate Moving Network LLC to pack up their Canadian apartment and transport their goods across the border and into the Golden State. However, the goods never arrived: while stopping for the night in Washington state, the truck and all of Plaintiffs' possessions were stolen. Some of those goods were recovered, but most were damaged or otherwise lost forever. The Parties now contest whether Defendant is strictly liable for the loss of Plaintiff's goods under the Carmack Amendment, 49 U.S.C. § 14706, or whether Plaintiffs waived that liability under § 14706(c)(1)(A).

For the purposes of this dispute, the Court focuses on the dealings between the Parties prior to the Plaintiffs' move. On December 12, 2022, Bolshin reached out to Defendant for a moving quote and exchanged emails with Defendant's Sales Manager, Nicholas Miller (who is also known as Mykola Melnyk). (Declaration of Matthew Bolshin (Dkt. No. 33) ¶ 9–10.) As part of that discussion, Miller emailed Bolshin the following language:

> **Insurance options**: 1) you can accept the basic free insurance coverage which is 60 cents per pound per article 2) opt for additional coverage for $250 for every $10k coverage with $1000 deductible 3) check movinginsurance.com for additional or full replacement coverage.

(Bolshin Decl., Ex. A at 10 (the "Email").) Bolshin and Miller also spoke on the phone, but "never discussed what insurance [Plaintiffs] wanted for the move, or what a Valuation Level was, or how much [Bolshin] thought [Plaintiffs'] items might be worth." (Bolshin Decl. ¶ 11.)

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 2

On January 30, 2023, Miller sent Bolshin a formalized quote for the move, which was scheduled for February 3, 2023. (Bolshin Decl., Ex. B (the "Quote").) The Quote contained the following bullet points under the heading "Valuation coverage for your belongings:"

- Your belongings will be covered with free basic coverage of 60 cents per pound per article (item) by default as required by Department of Transportation;
- If you would like to purchase the optional Declared Value Protection, please check with third party insurance company – movinginsurance.com or ask our representative regarding insurance coverage thru our insurance broker;
- For moves into storage additional valuation is for move-ins only; separate coverage must be purchased for move-out of the storage;
- Any additional coverage must be purchased at least 24 hours prior to the move and can't be added under any circumstances on the day of the move.
- Any damages/loss to personal items, furniture and property(apartment\office building, private house) must be acknowledged by the foreman (crew leader) while the movers are still on-site and such damages/loss must be duly noted in the contract (bill of lading).
- Any claims will be accepted for review only within 14 days upon the move.
- All electronic devices must be checked with the crew leader before the move and right after the move before the crew leave the premises.

(Bolshin Decl., Ex. B at 33.) Bolshin reviewed the Quote, signed it electronically, and returned it to Miller and Elate that same day. (Id. at 35.)

On the morning of February 3, 2023, Defendant's movers met Khmelnik at Plaintiffs' Vancouver apartment to pack and begin the move. Before packing, one of the movers had Khmelnik sign Defendant's "Written Binding Estimate, Order for Service and Bill of Lading Residential Moving Contract." (Declaration of Irina Khmelnik (Dkt. No. 36) ¶ 8; Ex. B (the "Estimate").) The Estimate reads "[t]his shipment is automatically valued at, and insured for $5,000. You must accept, or reject this valuation and insurance coverage by initialing one of the three options below." (Id.) "Option 1" indicates that the customer "accept[s] the $5,000 valuation and insurance coverage for which a charge of $____ will be assessed. This charge is in addition to the written binding estimate charge." (Id.) "Option 2" allows customers to "reject the $5,000 valuation and insurance coverage and order $____ insurance coverage, for which a charge of $____ will be assessed. This charge is in addition to the written binding estimate charge." (Id.)

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 3

Neither Option 1 nor Option 2 had any information filled out and neither were selected by Khmelnik. (Id.) Khmelnik did, however, initial next to "Option 3" which indicated that she "reject[ed] the $5,000 valuation and insurance coverage, and understand that the shipment will be valued at 60 cents, per pound, per article. For this coverage there is no additional charge." (Id.) She then signed at the bottom of the page, and again on the bottom of the reverse page. (Id.) Had Khmelnik not signed, the move would have been cancelled and Plaintiffs would have owed Defendant "several thousand dollars." (Khmelnik Decl. ¶ 9.)

Plaintiffs' Vancouver apartment was packed that same day and the moving truck began its journey towards southern California. (Khmelnik Decl. ¶ 13.) The following morning, Bolshin received a call from Defendant that the shipment had been stolen overnight. (Bolshin Decl. ¶ 16.) Although the truck was ultimately found, most of Plaintiffs' belongings were damaged or lost. (See Bolshin Decl., Ex. C.) In total, Plaintiffs claim that the replacement value for their damaged or missing items was $47,432.23. (Pltfs.' Mot. at 8.) However, Defendant claimed that Plaintiff had accepted the valuation level of 60 cents per pound, per article, and therefore would only provide Plaintiffs with $3,900 in recovery. (Bolshin Decl., Ex. A at 22–26.)

On March 19, 2024, Plaintiffs filed their lawsuit seeking damages related to the loss of their goods. (Complaint (Dkt. No. 1) at 10.) Defendant has now moved for partial summary judgment on the basis that Plaintiffs had agreed to limit Defendant's liability for the lost goods. (Def.'s Mot. at 4.) Plaintiffs also move for partial summary judgment on same grounds, but also argue that they are entitled to attorneys' fees under 49 U.S.C. § 14708. (Pltfs.' Mot. at 2–3.) The Parties both agree that the issue of damages is a factual determination that is not ripe for judgment as a matter of law.

# ANALYSIS

The Court first reviews the applicable legal standard before analyzing the question of Defendant's liability to Plaintiffs under the Carmack Amendment. Finally, the Court then briefly discusses Plaintiffs' request for statutory attorneys' fees.

**A.    Legal Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

**B.    Liability**

The Carmack Amendment imposes strict liability on carriers for the loss or damage to goods in their care. See 49 U.S.C. § 14706. However, carriers may limit the liability imposed under the Amendment by satisfying the following test set forth in Hughes Aircraft Co. v. N. Am. Van Lines, Inc.:

> "Before a carrier's attempt to limit its liability will be effective, the carrier must (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement."

970 F.2d 609, 611–12 (9th Cir. 1992). "The carrier has the burden of proving that it has complied with these requirements." Id. at 612.

Plaintiffs first argue that Defendant never gave them a reasonable opportunity to select between two or more levels of liability. (Pltfs.' Mot. at 13.) The Court agrees.

"A reasonable opportunity to choose between different levels of coverage means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice." Hughes, 970 F.2d at 612 (quoting Carmana Designs, Ltd., v. N. Am. Van Lines, Inc., 943 F.2d 316, 319 (3d Cir. 1991).

The agreement in the record does not reflect an "absolute, deliberate and well-informed choice" by Plaintiffs to limit Defendant's liability under the Carmack Amendment. See Hughes, 970 F.2d at 612. Between the Email, the Quote, and the Estimate, Defendants had three opportunities to inform Plaintiffs of the liability limitation but failed to do so. First, the Email provided Plaintiffs with three "Insurance Options," but fails entirely to expressly inform Plaintiffs that Defendant's statutory liability might be limited. Although similar, insurance is not the same as liability. Compare Liability, Black's Law Dictionary (12th ed. 2024) ("The quality, state, or condition of being legally obligated or accountable [to another]") with Insurance, Black's Law Dictionary (12th ed. 2024) ("A contract by which one party (the insurer) undertakes to indemnify another party (the insured) against risk of loss, damage, or liability arising from the occurrence of some specified contingency."). The Court finds that Plaintiffs could not make an

1   "absolute, deliberate and well-informed choice" regarding liability when only presented
2   information regarding insurance.
3         Defendant cites to CorTrans Logistics, LLC v. Landstar Ligon, Inc., 489 F. Supp. 3d 824
4   (S.D. Ind. 2020), in arguing that the distinction between insurance or valuation is "not material."
5   (Dkt. No. 46 at 6.) But CorTrans only serves to reinforce the Court's conclusion because the
6   language of the agreement at issue there expressly informed the shipper of the carrier's limitation
7   on liability. See e.g., id. at 832–833 (finding reasonable notice and opportunity when the original
8   agreement "specifically limit[ed]" the "'CARRIER'S MAXIMUM LIABILITY" and a
9   subsequent amendment expressly "clarif[ied] Carrier's maximum liability") (emphasis and
10  capitalization in original). Here, by contrast, the Email says nothing regarding liability or
11  valuation, let alone the type of explicit language which constituted reasonable notice and
12  opportunity in CorTrans.
13        Second, while the Quote does indeed discuss "Valuation," it failed to provide Plaintiffs
14  with an adequate choice "between two or more levels of liability." Hughes, 970 F.2d at 612.
15  Instead, the January 30, 2023, quote preselected the "free basic coverage of 60 cents per pound
16  per article (item) by default." (Bolshin Decl., Ex. B at 33 (emphasis added).) The Ninth Circuit's
17  requirement of an "absolute, deliberate and well-informed choice" cannot withstand such as the
18  default selection imposed on Plaintiffs. And the ability to "purchase the optional Declared Value
19  Protection" through a third-party insurer cannot be considered a valuation option under Hughes.
20  See Muzi v. N. Am. Van Lines, Inc., No. 8:14CV267, 2015 WL 1243177, at *5 (D. Neb. Mar.
21  18, 2015) ("Separate liability insurance from a third-party insurance company is not valuation
22  coverage governed by Federal law, but optional insurance regulated under State law.") (quotation
23  omitted) (citing Nipponkoa Ins. Co. v. Atlas Van Lines, Inc., 687 F.3d 780, 782 (7th Cir. 2012).
24

1    Third and finally, the Estimate includes different choices of valuation, but lacks the
2 notice requirement required by Hughes. To evaluate reasonable notice, courts in this circuit
3 examine the following factors: (1) whether the limitation was specifically brought to the
4 shipper's attention; (2) the shipper's sophistication, experience, or prior dealings with a carrier;
5 (3) whether the shipper drafted the contract in question and negotiated its terms; and (4) whether
6 the limitation was reproduced in the bill of lading. See Comsource Indep. Foodservice
7 Companies, Inc. v. Union Pac. R. Co., 102 F.3d 438, 444 (9th Cir. 1996) (collecting cases).
8    As to the first factor, Khmelnik testified that she did not know that Option 3 would limit
9 Defendant's liability should something happen to the shipment. (See Dkt. No. 45 at 64 ("Q. Did
10 you understand when you initialled [sic] and chose option three that if something happened to
11 your possessions, the most you could get would be $0.60 per pound? A. I don't know.") The
12 Court finds this factor does not in favor of Plaintiffs having notice. As to the second factor,
13 Plaintiffs were relatively unexperienced with moving generally and had never dealt with
14 Defendant prior to their move to California. (Bolshin Decl. ¶ 8 (Bolshin "had never hired movers
15 in the US before and was completely unfamiliar with the process").) This factor weighs against
16 notice. So, too, does the third factor, as the Estimate was drafted entirely by Defendant. Finally,
17 the Court finds that the fourth factor to be neutral. While Option 3 mirrors the valuation level
18 found in the Quote, Options 1 and 2 contain valuation levels which had not been previously
19 disclosed to Plaintiffs.  On balance, the Court finds that the Estimate failed to provide Plaintiffs
20 with adequate notice of the liability waiver, and therefore divested them an adequate choice
21 under Hughes.
22    The Court's analysis above is supported by regulations issued by the Federal Motor
23 Carrier Safety Administration ("FMCSA") and the Surface Transportation Board ("STB"). The
24

Court "treats an alleged violation of a federal standard as one indicator, though not dispositive, of whether Plaintiffs had a reasonable opportunity to choose among different levels of coverage under the second element of the Hughes test." See Aydlett v. Flat Rate Long Distance, Inc., No. CV 16-7712 PSG (JCX), 2017 WL 2992443, at *3 (C.D. Cal. May 11, 2017) (finding that while courts in the Ninth Circuit have not required a "strict compliance approach vis-à-vis the STB and FMCSA regulations," it was nevertheless "appropriate to treat the federal regulations as a relevant standard of care in establishing whether Plaintiffs had a reasonable opportunity to choose between different levels of coverage."). Here, Defendant failed to provide Plaintiffs with regulatory-mandated literature pertaining to the valuation of their goods and limitations of liability, as required by 49 C.F.R. § 375.213(a). Without this literature, Plaintiffs were ill-equipped to realize that the Defendant had not complied with the requirements of the Carmack Amendment when proposing levels of "insurance" in the Email. Also, Defendant failed provide Plaintiffs with the Estimate "at least 3 days before the shipment is scheduled to be loaded," as required by 49 C.F.R. § 375.505(h). With the benefit of three days to review the Estimate, Plaintiffs may have been able to come to a well-informed choice regarding the valuation of their shipment. Instead, Plaintiffs found themselves needing to either sign the Estimate when it was first presented or otherwise pay a hefty monetary penalty and reschedule their move. In sum, Defendant's failure to adhere to these regulations supports the Court's findings that Plaintiffs did not have adequate choice of liability under Hughes.

     Having determined that Defendant failed to satisfy the second element of the Hughes test, the Court finds that Defendant did not limit its liability for the damage caused to Plaintiffs' goods under the Carmack Amendment. Accordingly, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment and DENIES Defendant's Motion for Partial Summary Judgment as

to the liability issue. Because Hughes is a conjunctive test, Defendant's failure to satisfy one element is dispositive of the entire issue of liability. Therefore, the Court declines to address Plaintiffs' additional argument regarding acceptance and the validity of the bill of lading.

C.   **Attorneys' Fees**

Plaintiffs argue that they should be awarded statutory attorneys' fees under 49 U.S.C. § 14708(d). (Pltfs.' Mot. at 24–26.) The Court disagrees. Attorneys' fees under § 14708 are limited only to disputes including the "collect-on-delivery [("COD")] transportation of household goods." 49 U.S.C. § 14708(f); see also Richard v. United Van Lines, LLC, No. 1:23-CV-01026-RMR-MDB, 2025 WL 798750, at *7 (D. Colo. Mar. 7, 2025) (denying attorneys' fees under § 14708 upon finding that the shipment at issue was "not a COD transaction"). The Court notes that neither Party analyzed § 14708(f) in their briefing but finds there is sufficient evidence in the record to determine the issue. Specifically, the Estimate includes three boxes—labeled "Charge," "Prepaid," and "C.O.D."—which appear to indicate the payment agreement between the Parties. The box next to "Charge" is checked; the box next to "C.O.D." remains blank. Therefore, the Court concludes that this was not a COD transaction so DENIES Plaintiff's Motion as to the issue of attorneys' fees.

## CONCLUSION

Defendant did not give Plaintiffs a reasonable opportunity to choose between two or more levels of liability before accepting their goods for shipping. The Email failed to inform Plaintiffs that their selection of insurance would limit Defendant's liability should the goods be damaged or lost. The Quote only repeated the default choice but failed to provide any additional levels as required by Hughes. And while the Estimate did provide multiple choices, Plaintiffs did not have reasonable notice of those choices. Therefore, the Court finds that Defendant failed to

limit their liability under the Carmack Amendment, and accordingly GRANTS Plaintiff's Motion IN PART and DENIES Defendant's Motion IN FULL.

However, the Court DENIES Plaintiffs' Motion as to the issue of attorneys' fees, as the move was not a COD transaction as required by § 14708(f).

The clerk is ordered to provide copies of this order to all counsel.

Dated June 4, 2025.

Marsha J. Pechman
United States Senior District Judge